IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CARRIE GREGORY,<br><br>                  Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA, CITY OF GREAT FALLS, PROBATION OFFICER TOMEKA WILLIAMS, REGION 3 DEPUTY CHIEF WAYNE BYE, GREAT FALLS POLICE OFFICER SCOTT FISHER, DOES 1-10,<br><br>                  Defendants. | CV-20-51-GF-BMM<br><br>ORDER REGARDING SANCTIONS |

## INTRODUCTION

Plaintiff Carrie Gregory ("Gregory") filed a Motion for Sanctions against Defendant State of Montana ("the State") due to alleged spoliation of evidence. (Doc. 28.) The alleged spoliation of evidence claim arose from the State's failure to preserve a copy of the security camera video of the parking lot of the office of

the Montana Probation and Parole in Great Falls, Montana. The security camera video would have captured the events of May 15, 2020, when Gregory brought her son, Daniel Gregory, to the office that led to Daniel's arrest and alleged injuries to Carrie Gregory. The State opposes the motion.

The Court held a hearing on September 27, 2021. The Court announced at the end of the hearing that it would grant Gregory's Motion for Sanctions and directed the parties to file simultaneous briefs regarding the appropriate sanction by October 8, 2021. (Doc. 75.) The parties filed their respective briefs and the Court having considered the matter is prepared to rule.

## BACKGROUND

The facts related to Gregory's Motion for Sanctions arise from an altercation in the parking lot of the Montana Probation and Parole Office in Great Falls, Montana on May 15, 2020. (Doc. 16 at 11.) Officers arrested Daniel Gregory in the parking lot on parole violations. *Id.,* at 12. It appears that Gregory got out of the driver door of her car when the officers arrested Daniel Gregory. Gregory alleges that Probation Officer Tomeka Williams approached her and forced her onto the hood of another car. *Id.,* at 14-15. Officer Williams alleges that Gregory failed to respond to her instructions to stay back and that Gregory pushed and hit her. (Doc. 29-2 at 75:3-76:11.) Gregory alleges that she suffered a fracture to her left elbow and a sprained wrist from the encounter. (Doc. 16 at 17.) Gregory further alleges

that she suffered injuries to her knee when Great Falls Police Officer Scott Fisher forced her into an awaiting police car. *Id.,* at 18. The City of Great Falls filed misdemeanor obstruction charges against Gregory. *Id.,* at 24.

Security cameras employed by the Montana Probation and Parole Office captured the events at issue from several different angles. Gregory's counsel in the obstruction case instructed Deputy Probation and Parole Chief Wayne Bye to preserve the video evidence captured on the security cameras. *Id.,* at 23, 25, 26. The security system automatically deletes the videos after 17 days. (Doc. 29 at 9.) Deputy Chief Bye failed to preserve the video before the 17-day auto-deletion and instead used his cell phone to record a copy of the altercation as it played on his computer monitor. (Doc. 16 at 7.) The City of Great Falls dismissed the obstruction charges against Gregory after it had discovered that the State had failed to preserve the video recordings. *Id.,* at 28, 30.

Gregory now has filed this Amended Complaint in which she alleges various constitutional violations and two tort claims against all Defendants, and an assault and battery claim against Defendants Tomeka Williams and Officer Fisher. (Doc. 29.) The Court dismissed Count II and Count III of the Amended Complaint against the State on the grounds that the State does not qualify as a "person" for purposes of an action under 42 U.S.C. § 1983. (Doc. 21.)

*Legal Framework*

3

A district court possesses inherent powers to control litigation, including the levying of sanctions for the spoliation of evidence. *Leon v. IDX Systems Corp.*, 464 F.3d 951. 958 (9th Cir. 2006). A court may levy sanctions when a party knew, or should have known, that the spoliated evidence could prove relevant to a claim. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The imposition of sanctions does not require bad faith on the part of the offending party. *Glover*, 6 F.3d at 1329. Simple notice of the potential relevance to the litigation will suffice. *Id.*

The roster of sanctions available include the following actions: 1) exclusion of evidence; 2) admission of evidence regarding the circumstances of the spoliation; or 3) instruction to the jury that it may infer that the spoiled evidence would have been unfavorable to the responsible party. *Id.* A court also possesses the authority to dismiss an action or enter a default judgment under appropriate circumstances. *Leon*, 464 F.3d at 958. These circumstances include a situation where the spoliated evidence relates to the matters in controversy in such a way that its spoliation threatens to interfere with the rightful decision of the case. *United States v. National Medical Enterprises, Inc.*, 792 F.2d 906, 912 (9th Cir. 1986).

A court's imposition of more drastic sanctions typically requires a finding of "willfulness, fault, or bad faith." *Leon*, 464 F.3d 958. A finding of any of these

circumstances could "justify the sanction of dismissal [or entry of default]." *Halaco Engineering Co. v. Costle*, 843 F.3d 376, 380 (9th Cir. 1988). As discussed in the caselaw, fault represents an amorphous concept not specifically defined. *Munoz-Santana*, 742 F.2d at 564. Fault differs from "willfulness" and "bad faith" and can serve as the basis for dismissal or default judgment on its own. *In re Slimick v. Silva*, 928 F.2d 304, 310 (9th Cir. 1990)

## ANALYSIS

The Montana Supreme Court faced a similar issue in *Spotted Horse v. BNSF Railway Company*, 350 P.3d 52 (Mont. 2015), where an injured machinist sued the railroad for injuries suffered when the rope used to lower the engine compartment hatch allegedly slipped through a co-worker's hand causing the hatch to strike the worker on the head. At the time of accident, the railroad had video cameras that ran 24 hours per day, seven days per week, throughout the shop stalls. *Id.*, at 54. The system automatically overwrote old video footage every 15 to 30 days. *Id.*

The Montana Supreme Court's analysis proves instructive here. The injured worker claimed that he had requested a copy of the video during his post-accident interview and he had renewed the request several times during discovery. *Id.* The railroad provided several photographs from the cameras, but never provided any video footage. *Id.* The foreman on duty acknowledged that he had "probably watched about 15 minutes" of video from a camera located closest to the incident.

*Id.* The foreman explained that he had not requested a copy of the video because "[t]here was no evidence to preserve" as the camera failed to capture the alleged injury to the worker. *Id.* Neither the foreman, nor any investigator from the railroad, ever requested the video before the system overwrote it. *Id.*

The trial court denied the worker's motion for entry of default judgment as the worker had failed to present sufficient evidence to warrant "the most drastic of all sanctions, default judgment." *Id.*, at 56. The trial court instead prohibited the railroad from introducing or referring to any testimony of evidence that any employee had watched the video footage. *Id.* The Montana Supreme Court deemed this sanction to be inadequate. The court recognized that as "a sophisticated and recurrent party to litigation," the railroad knew of its obligation to preserve evidence. *Id.*, at 57. The court rejected the notion that the railroad unilaterally was entitled to "determine which evidence is relevant or valuable when investigating an alleged work-related accident." *Id.*, at 58. The railroad's conduct, whether intentional or inadvertent, had "effectively undermined the 'search for the truth' of what actually transpired." *Id.* (quoting *Oliver v. Stimson Lumber Co.*, 993 P.2d 11, 17 (Mont. 1999)). The court remanded the case to the trial court to fashion an appropriate remedy "commensurate with the significance" of the railroad's actions in allowing the evidence to be destroyed and that would "satisfy the remedial and deterrent goals of sanctions for spoliation of evidence." *Id.*, at 60.

Similar to the railroad, the State is a sophisticated and recurrent party to litigation. *Id.,* at 57. The State should have known of its obligation to preserve evidence. *Id.* The State does not get to determine unilaterally "which evidence is relevant or valuable" when investigating this incident. *Id.*, at 58. And similar to *Spotted Horse*, the Court declines to impose an outright default judgment against Defendant City of Great Falls for its spoliation of the security camera video recording.

The Court instead, designates for purposes of this case, that Officer Williams and Officer Fisher used unreasonable force to effect the arrest of Gregory. The Court reserves to the jury the issues of causation, injury, and damages. The Court also reserves to the jury the following factual issues specific to the arrest: whether the Officer Williams and Officer Fisher acted with malice. The Court deems this sanction "commensurate with the significance" of the State's actions in allowing the evidence to be destroyed and also believes that it would "satisfy the remedial and deterrent goals of sanctions for spoliation of evidence." *Id.,* at 60.

The Court recognizes that its sanction effectively grants summary judgment to Gregory on the issue of unreasonable force. The Court has considered carefully the analysis of *Halaco Engineering*, 843 F.3d at 380 and *Leon*, 464 F.3d at 958. The application of these factors by the court in *Peschel v. City of Missoula*, 664 F.Supp.2d 1137 (D. Mont. 2009), supports this remedy. The City of Missoula in

*Peschel* failed to preserve video recordings of an arrest that resulted in a series of injuries to the plaintiff. The court concluded that the City of Missoula had a duty under Montana law to preserve video recordings throughout the course of an investigation when the prospect of a civil suit was "reasonably foreseeable." *Peschel*, 664 F.Supp.2d at 1145. The City of Missoula had proposed as a sanction prohibiting "the officers from testifying as to what they saw on the video." *Id.* The court rejected this proposed sanction as not sufficiently punishing the City of Missoula for its spoliation and not serving "as a sufficient disincentive to destroy evidence." *Id.*, at 1148. The court instead determined that a conclusive finding regarding the arresting officers' use of unreasonable force constituted the most appropriate sanction. *Id.*, at 1145. A similar sanction would be appropriate here.

The Court analyzes each factor from *Halaco Engineering* and *Leon* in turn in support of its sanctions.

**1. The Existence of Extraordinary Circumstances.**

The State's spoliation of the security camera videos severely disrupted the orderly administration of justice. A simple case now has grown complicated due to the State's spoliation of the video recordings. The fact-finder could have watched the videos as part of its determination of the level of force used to effectuate Gregory's arrest. The spoliation irreparably has jeopardized the accuracy of the fact-finding process to the prejudice of Gregory. Imposition of a lesser sanction

would cause the trial to become divorced from the merits and focused instead upon the spoliation. *Peschel*, 664 F.Supp.2d at 1146.

### 2. The Presence of Willfulness, Bad Faith, or Fault by the Offending Party.

Gregory argues that the evidence surrounding the spoliation of the security camera video recordings supports the conclusion that the spoliation arose from gross negligence on the part of the State and its employees. Gregory cannot sustain her burden to establish gross negligence or willfulness on the part of the State. The Court concludes, however, that the evidence supports a determination that the spoliation arose from recklessness on the part of the State in failing to take appropriate steps to preserve the recordings before they were deleted. *Peschel*, 664 F.Supp.2d at 1146-47. The State possessed sufficient resources and technological acumen to determine how to have preserved the video. The Court rejects out of hand the State's claim that the effort by Deputy Chief Bye to record the security videos on his cell phone while watching the videos on his monitor provides Gregory with an adequate substitute for the real thing.

### 3. The Efficacy of Lesser Sanctions.

The Court must analyze the feasibility of less drastic sanctions and provide a reasonable explanation as to why these alternative sanctions would be inappropriate. *Halaco Engineering*, 843 F.2d at 381; *Leon*, 464 F.3d at 960. The

9

proposed instruction offered by Defendants would direct the jury to infer that the spoliated video recording would have been unfavorable to the State. *Medical Laboratories Management Consultants v. American Broadcasting Companies, Inc.*, 306 F.3d 806, 824 (9th Cir. 2002). The rebuttable presumption created by the adverse inference instruction would not punish the State sufficiently for its spoliation or serve as a deterrent in future cases. The State would be permitted to proceed to trial where it would pit its witnesses against Gregory, "unphased by its spoliation of the video recording." *Peschel*, 664 F.Supp.2d at 1148. The rebuttable presumption instruction also would fail to cure the prejudice to Gregory from the loss of the best evidence of what happened during her arrest. *Id.*

The Court further notes that the proposed adverse inference instruction would be effective only if coupled with the admission of the spoliation itself. *Peschel*, 664 F.Supp.2d at 1148. To allow the admission of evidence regarding the spoliation would force the jury to focus on computer forensics rather than the merits of the case. *Id.* This inquiry also would require evidence relating to Deputy Chief Bye's computer capabilities and purported motive to allow the recordings to be deleted. Introduction of evidence of these matters would degrade the truth-finding process. *Id.*

### 4. The Relationship or Nexus Between the Misconduct and the Matters in Controversy.

The question of whether the misconduct to be penalized in this case relates "to matters in controversy in such a way as to interfere with the rightful decision of the case" represents the most critical criterion. *Halaco Engineering*, 843 F.2d at 381. No dispute exists that the spoliation of the security camera recordings relates to the principal matter in controversy: whether the arresting officers used unreasonable force to arrest Gregory. The video recordings would have provided the best evidence of what happened during the incident in the parking lot and arrest of Gregory. Spoliation of the video recordings directly has interfered with the rightful outcome of this case and weighs in favor of the Court's sanctions. *Peschel*, 664 F.Supp.2d at 1147.

### 5. The Prejudice to Gregory.

The prejudice inquiry "looks to whether the [spoliating party's] actions impaired [the affected party's] ability to go to trial or threatened to interfere with the rightful outcome of the case." *Leon*, 464 F.3d at 959. The injuries allegedly suffered by Gregory suggest that the degree of force used by the officers during the arrest may have been more than necessary under the circumstances. In the absence of the video recording to establish this fact, Gregory would be left with the difficult task of rebutting the testimony of the various officers that the force proved reasonable under the circumstances. *Id.*

## 6. Public Policy Favoring Disposition of Cases on Their Merits.

Public policy normally favors disposition of cases on their merits. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). This policy provides little weight here. The public also possesses a strong interest in the fair and accurate resolution of disputes that arise from encounters between law enforcement officers and the public. *Peschel*, 664 F.Supp.2d at 1147. The security camera recordings would have provided the best evidence of what happened during Gregory's arrest. The spoliation removes this best evidence and thereby hinders the most accurate determination of this case on its merits. The factor weighs in favor of the selected sanction.

The Court concludes that sanctions more substantial than an adverse inference instruction would be appropriate.

## ORDER

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Sanctions Against State of Montana (Doc. 28) is **GRANTED**. The sanctions imposed the State include the following actions:

1. Officer Tomeka Williams and Officer Scott Fisher used unreasonable force in the arrest of Carrie Gregory;

2. The Court will not permit testimony about the original video's contents before spoliation;

3. The Court reserves to the jury issues of causation, injury, and damages;

4. The Court reserves to the jury issues of actual malice used by Officer Williams and Officer Fisher; and

5. The Court will not allow the parties to present Deputy Chief Bye's cell phone recording of the video to the jury.

Dated the 3rd day of February, 2022.

_____
Brian Morris, Chief District Judge
United States District Court