IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CARRIE GREGORY,<br><br>              Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA, CITY OF GREAT FALLS, PROBATION OFFICER TOMEKA WILLIAMS, REGION 3 DEPUTY CHIEF WAYNE BYE, GREAT FALLS POLICE OFFICER SCOTT FISHER, DOES 1-10,<br><br>              Defendants. | CV-20-51-GF-BMM<br><br>**ORDER ON MOTIONS FOR SUMMARY JUDGMENT RE:**<br>**THE CITY OF GREAT FALLS** |

## INTRODUCTION

Defendant City of Great Falls ("the City") has filed a motion for summary judgment. (Doc. 42). Plaintiff Carrie Gregory ("Gregory") opposes the Motion. The Court held a hearing on the matter on September 27, 2021. For the following reasons, the Court **GRANTS IN PART**, and **DENIES IN PART**, the Motion.

## BACKGROUND

Gregory's claims arise from an altercation in the parking lot of the Montana Probation and Parole Office in Great Falls, Montana on May 15, 2020. (Doc. 16 at 11.) Officers arrested Daniel Gregory in the parking lot on parole violations. *Id.* at

12. Gregory alleges that she suffered a fracture to her left elbow and a sprained wrist from an encounter with Officer Tomeka Williams during her son's arrest. (Doc. 16 at 17.) Gregory further alleges that she suffered injuries to her knee when Officer Fisher forced her into an awaiting police car. *Id.* at 18.

Gregory has filed an Amended Complaint in which she alleges various constitutional violations and tort claims against the City: violation of civil rights under 42 U.S.C. § 1983 (Count II); violation of rights under the Montana Constitution (Count IV); negligence (Count V); and negligent infliction of emotional distress (Count VII). (Doc. 16 at 10, 14, 15, 17).

## LEGAL STANDARD

Summary judgment proves proper if the moving party demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court must view the evidence in the light most favorable to the non-moving party and draw all justifiable inferences in that party's favor. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 317, 323 (1986). The movant bears the initial burden of informing the court of the basis for its motion and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (internal quotation marks omitted).

The movant satisfies its burden when the documentary evidence produced by the parties permits only one conclusion. *Anderson*, 477 U.S. at 251–52. Where the moving party has met its initial burden, the party opposing the motion "may not rest upon the mere allegations or denials of his pleading, but [. . .] must set forth specific facts showing that there is a genuine issue for trial." *Id.* at 248 (internal quotation marks omitted).

## ANALYSIS

Gregory brings claims against the City in four separate counts of the Amended Complaint. (Doc. 16). These Counts include a claim under (I) 42 U.S.C. § 1983; (II) violations of the Montana Constitution; (III) negligence; and (IV) negligent infliction of emotional distress. The City also seeks summary judgment on three factual issues: (V) whether particularized suspicion supported the decision to detain Gregory and whether probable cause supported Gregory's arrest; (VI) whether the City is liable for punitive damages; and (VII) whether the City is liable for Gregory's broken elbow. (Doc. 43 at 3–5). The Court will address each of these counts and issues in turn.

### I.   Count II – 42 U.S.C. § 1983

Gregory alleges that she was deprived of numerous constitutional rights as a result of the City's deliberate indifference, customs, policies, and practices. (Doc.

3

16 at 11). The City argues that Gregory has failed to adequately allege or produce any evidence of any inadequacies in the City's training. (Doc. 43 at 12).

Municipalities may be held liable as "persons" under § 1983 "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury." *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 694 (1978). A municipality may be liable under *Monell* for a "longstanding practice," even if its formal written policies are constitutional. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 168 (1970).

A municipality may also be liable, under limited circumstances, when a municipal employee unconstitutionally applies a concededly valid policy if the employee has not been adequately trained and the constitutional wrong has been caused by that failure to train. *City of Canton v. Harris*, 489 U.S. 378, 387 (1989). A failure to train employees can create liability under § 1983 only where the failure to train amounts to deliberate indifference to the rights of people with whom the police are likely to come into contact. *Id.* at 388–89. A plaintiff must allege with specificity how a particular training program is defective for liability to attach. *Trammell v. Fruge*, 868 F.3d 332, 345 (5th Cir. 2017).

The City argues that Gregory has failed to meet the threshold for failure to train because Gregory's retained expert, Ed Obayashi, "offers only the conclusory

claim that the City failed to properly train its officers from 'employing unreasonable force against non-resisting individuals.'" (Doc. 43 at 17). Contrary to the City's assertion, Obayashi's report does contain support for his proposition that the City failed to properly train its officers. *See generally* (Doc. 61-7). Obayashi explains how a failure to review use of force incidents and a failure to reexamine procedures over time "demonstrates that either incompetency in properly evaluating use of force cases or deliberately ignoring obvious excessive use of force incidents involving GFPD officers." *Id.* at 32. If indeed the City had been failing to correct the behavior of officers involved in use of force incidents over time, then this would constitute a failure to train.

The City's comparison to *Peschel v. City of Missoula*, 686 F.Supp.2d 1107 (D. Mont. 2009) proves unavailing. In *Peschel*, the Court determined that the plaintiff failed to establish a causal connection between the failure to train officers in suicide or crisis management and the alleged excessive force that officers used against plaintiff. *Id.* at 1129. Here the connection is not nearly so attenuated—if the Great Falls Police Department failed to identify and correct officers' improper use of force, as Obayashi alleges it did, then the failure to train's connection to Officer Fisher's use of force against Gregory appears evident.

The City will have the full opportunity to attack Obayashi's opinions and their bases on cross-examination, but for now his expert report provides a

sufficient basis for Gregory's failure to train claim. The Court denies summary judgment to the City on Gregory's claims in Count II of her Amended Complaint.

## II.    Count IV – Violations of the Montana Constitution

Gregory alleges in Count IV that the City violated her rights under the Montana Constitution. These rights include the right to individual privacy, the right to be free from unreasonable searches and seizures, and the right to due process. (Doc. 16 at ¶ 52).

The City contends that the explicit textual source rule prohibits Gregory from "doubling up" her Montana constitutional claims that arise from the same, single tortious act that undergirds her 42 U.S.C. § 1983 claim. (Doc. 43 at 19), *citing Peschel v. City of Missoula*, 664 F.Supp.2d 1149, 1162 (D. Mont. 2009). The explicit textual source rule provides that a court must assess a claim under "an explicit textual source" of the rights in the Constitution, where applicable, and avoid analyzing the claim under a "more generalized" source. *Peschel*, 664 F.Supp.2d at 1162, *citing Ramirez v. Butte-Silver Bow County*, 298 F.3d 1022, 1029 (9th Cir. 2002). The Court in *Peschel* dismissed the plaintiff's generalized claims for cruel and unusual punishment arising from the plaintiff's arrest where the more explicit claim for excessive force applied. *Peschel*, 664 F.Supp.2d at 1162.

The City argues that the explicit textual source rule commands dismissal of Gregory's claims for violation of the more generalized constitutional provisions of violation of due process, cruel and unusual punishment, and violation of equal protection. The Montana Supreme Court has not addressed whether to adopt the explicit textual source rule. The Court in *Howell v. Earl*, No. CV 13-48-BU-DWM-JCL, 2014 U.S. Dist. LEXIS 82450, at *15 (D. Mont. 2014), dismissed the plaintiff's generalized constitutional claims of right to dignity, privacy and due process under the Montana Constitution when more explicit excessive force claim remained available. The Court reasoned that "[b]ecause the Montana Supreme Court looks to federal constitutional jurisprudence in analyzing claims under the Montana Constitution, this Court predicts it would adopt the explicit textual source rule." *Howell*, 2014 U.S. Dist. LEXIS 82450 at *44; *see also Peschel*, 664 F. Supp. 2d at 1161-62. The Court agrees with *Howell* that the Montana Supreme Court likely would adopt the explicit textual source rule.

*Peschel* proves instructive in determining how the explicit textual source rule applies to Gregory's claims. In *Peschel*, police officers from the City of Missoula arrested the plaintiff for misdemeanor obstruction after a stand-off in which the plaintiff attempted to assist a tenant of an apartment that he owned who appeared to be having a psychotic episode. *Peschel*, 664 F.Supp.2d, at 1157-58. The plaintiff refused to comply with the officers' commands to step back. The

officers eventually took the plaintiff to the ground when they arrested him after the tenant lost consciousness. *Id.* The plaintiff alleged constitutional claims of cruel and unusual punishment and excessive force. The Court dismissed the plaintiff's claim for cruel and unusual punishment due to the availability for relief under the more explicit textual source related to excessive force. *Id.*, at 1162.

This same rationale applies here to Gregory's claims for violation of the more generalized Montana constitutional provisions. As a result, like in *Peschel* and *Howell*, dismissal of Plaintiff's Montana constitutional claims in Count IV for violations of privacy and due process would be appropriate. The Court grants summary judgment to the City on Gregory's claims in Count IV of her Amended Complaint for alleged violations of the Montana Constitution's right to privacy and right to due process.

### III.  Count V – Negligence

Gregory claims that the City committed the following negligent acts against her by violating its duty of care: negligent use of excessive force against Gregory; negligent arrest and seizure of Gregory; and negligent retention and supervision of law enforcement officers. (Doc. 16 at 16).

The City argues that Gregory's negligence claims fail for several reasons. The City contends that Officer Fisher's actions against Gregory in the Amended Complaint were intentional rather than negligent. The City argues next that it owes

no duty to Gregory under the public duty doctrine to train or supervise its officers. The City argues, finally, that Gregory fails to provide adequate expert testimony that the City negligently trained or supervised officers. (Doc. 43 at 14–17).

### a. Officer Fisher's intentional conduct

Gregory asserts negligence in Count V against the City. Gregory alleges the following claims for negligence: negligent use of force; negligent use of excessive force; negligent arrest and seizure; negligent hiring, retention, training, supervision, and discipline of law enforcement officers; negligent violation of constitutional, statutory, and common law rights; and negligent performance of official duties. (Doc. 16 at ¶57). Gregory concedes that she will no longer pursue a negligent hiring claim against the City. (Doc. 60 at 32). Accordingly, the Court grants summary judgment in favor the City on that claim.

The City argues that no cause of action exists for the following claims: negligent use of excessive force or negligent arrest. (Doc. 43 at 20). Negligent use of excessive force, by definition, involves an intentional act, and, therefore, cannot provide the basis for a negligence claim. Negligent arrest and seizure, negligent violation of constitutional, statutory, and common law rights, and negligent performance of official duties can all be construed, however, as legitimate negligence claims. The Court grants summary judgment to the City on Gregory's

claims in Count V of her Amended Complaint for alleged negligent use of excessive force.

### b. The City's duty under the public duty doctrine

A plaintiff must prove four elements to establish negligence: (1) duty; (2) breach; (3) causation; and (4) damages. *Dobrocke v. City of Columbia Falls*, 8 P.3d 71, 76 (Mont. 2000). Whether a party owed a legal duty to someone and the scope of that duty are questions of law. *Dukes v. City of Missoula*, 119 P.3d 61, 63 (Mont. 2005).

The public duty doctrine holds that a law enforcement officer does not owe a duty to an individual plaintiff when carrying out their general duty to protect and preserve the peace. *Renenger v. State*, 426 P.3d 559, 567 (Mont. 2018). The law enforcement officer owes a duty to the public at large. *Nelson v. Driscoll*, 983 P.2d 972, 977 (Mont. 1999). A general duty to protect does not give rise to liability for a particular individual's injury absent a greater duty imposed by a special relationship. *Phillips v. City of Billings*, 758 P.2d 772, 775 (Mont. 1988). Any alleged act of negligence by a law enforcement officer must be evaluated in light of the officer's job and daily duties. *Renenger*, 426 P.3d at 568.

The City argues that the public duty doctrine precludes claims for "negligent hiring, retention, training, supervision, and discipline of law enforcement officers." (Doc. 70 at 8). Gregory argues that the public duty doctrine does not apply to

negligence actions premised upon the existence of a duty other than the duty to protect and preserve the peace. *See Bassett v. Lamantia*, 417 P.3d 299, 307 (Mont. 2018). In *Bassett*, the public duty doctrine did not shield an officer who tackled a civilian because "'[a] duty owed to all is a duty owed to none' does not apply when the alleged duty breached is not owed to 'all,' but rather owed to an individual." *Bassett*, 417 P.3d at 307.

*Bassett* applies to the conduct of Officer Fisher during his contact with Gregory. The City's duty to ensure that Officer Fisher was a competent officer occurred before Fisher came into contact with Gregory. *See Todd v. Baker*, No. CV 10-127-M-DWM, 2012 WL 1999529, at *12 (D. Mont. June 4, 2012) (holding that the public duty doctrine shielded the defendant officer because his actions occurred before he owed a particular duty to the plaintiff). The duty to properly train officers represents a duty that the Great Falls Police Department owed to the community at large. That duty to Gregory ripened, however, once Officer Fisher chose to get involved in Gregory's arrest and removal to a police car. The public duty doctrine does not apply under the circumstances. *Bassett*, 417 P.3d at 307.

### c. Gregory's expert's testimony

Similar to the negligent training claim, Gregory's expert Obayashi, has provided a sufficient basis to draw a connection between the City's alleged failure to train and supervise Officer Fisher. The City can challenge these opinions on

cross-examination and let the jury decide whether sufficient connections exists. The Court denies summary judgment to the City on these claims.

## IV. Count VII – Negligent infliction of emotional distress

Claims for negligent infliction of emotional distress will lie where serious or severe emotional distress was the reasonably foreseeable consequence "of the defendant's negligent act or omission." *Sacco v. High Country Indep. Press, Inc.*, 896 P.2d 411, 425 (1995). The Montana Supreme Court has not addressed the unique position of police officers when claims are made for infliction of emotional distress, but the City argues that the District of Montana has recognized that probable cause acts as a defense to emotional distress claims stemming from an arrest. (Doc. 43 at 28), *citing Wagemann v. Robinson*, No. CV 13-78-BU-DLC-CSO, 2015 WL 3899226, at *26 (D. Mont., June 16, 2015).

In *Wagemann*, Magistrate Judge Osby determined that "serious or severe emotional distress, in the form of sleep apnea, cannot be considered to be a reasonably foreseeable consequence of arresting and charging someone for aggravated assault *when there exists probable cause for the arrest and charge*." *Id.* (emphasis added). The wording of the holding in *Wagemann* makes it unclear whether a finding of probable cause truly would prohibit infliction of emotional distress claims in all cases stemming from an arrest. Even assuming this interpretation, however, it does not compel summary judgment in this case. As

12

discussed below, it remains for the jury to decide whether probable cause existed for Officer Fisher to arrest Gregory.

The City argues, in the alternative, that Gregory's negligent infliction of emotional distress claim fails due to the absence of a key element—"a negligent act or omission." (Doc. 43 at 30). The Court has already determined, however, that several of Gregory's negligence claims survive summary judgment and will depend on the jury's determination of factual issues at trial. For that same reason, the Court denies the City summary judgment on Gregory's negligent infliction of emotional distress claim.

## V. Probable Cause Determination

Finally, the Court addresses the remaining constitutional claims of whether particularized suspicion existed to detain Gregory and whether probable cause existed to arrest Gregory. The City incorporates the arguments and authorities of its employee and co-defendant Officer Fisher with regard to this issue and so the Court addresses Officer Fisher's arguments directly. (Doc. 70 at 11).

Officer Fisher cites to *Stearns v. Clarkson*, 615 F.3d 1278 (10th Cir. 2010), to support his claim that he reasonably relied upon Officer Williams's determination that particularized suspicion existed to detain Gregory and that probable existed to support Gregory's arrest. (Doc. 69 at 7.)

A deputy in *Stearns* asserted a claim of qualified immunity when he relied upon his police department's probable cause determination in assisting in an arrest at the police department's request. The Tenth Circuit reasoned that when one officer requests that another officer assist in executing an arrest, "the assisting officer is not required to second-guess the requesting officer's probable cause determination, nor is he required to independently determine that probable cause exists." *Stearns*, 615 F.3d at 1286; *citing Baptiste v. J.C. Penney Co.*, 147 F.3d 1252, 1260 (10th Cir.1998) ("An officer who is called to the scene to conduct a search incident to arrest is not required to reevaluate the arresting officer's probable cause determination in order to protect herself from personal liability.").

It remains unclear the role that Officer Fisher played in detaining Gregory initially and in effectuating Gregory's arrest. Gregory alleges in her Amended Complaint that Officer Fisher "intervened to assist in [Gregory's] detention." (Doc. 16 at 5.) This allegation supports the position that Gregory played a role in Gregory's initial detention. Gregory further alleges that Officer Fisher "walked" Gregory to a police car and "performed an aggressive maneuver which spun [Gregory] around, thereby injuring [Gregory's] knee." *Id.*

These allegations suggest that the rationale of *Stearns* may apply to Officer Fisher's conduct regarding the decision to detain Gregory. These allegations also suggest, however, that the rationale of *Stearns* would not apply to Officer Fisher's

conduct after Gregory's initial detention. No decisions or determinations made by Officer Williams in arresting Gregory related to Officer Fisher's alleged actions while walking the handcuffed Gregory to his police car. These questions remain for the jury to decide as the finder of fact. The Court denies Officer Fisher's motion for summary judgment regarding whether particularized suspicion existed to detain Gregory and whether probable cause existed to support Gregory's arrest.

**VI.    Liability for punitive damages**

Governmental entities in Montana are immune from punitive damages. M.C.A. § 2-9-105. The City, as a governmental entity, would enjoy immunity from having to pay punitive damages to Gregory. (Doc. 43 at M.C.A. § 2-9-101(3).

Gregory admits that she is not entitled to punitive damages under state law. Gregory argues that she may be entitled to punitive damages under 42 U.S.C. § 1983 if the trier of fact were to find that the defendants acted oppressively. (Doc. 60 at 43). The Court disagrees. The City is a municipality and municipalities are immune from punitive damages under 42 U.S.C. § 1983. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). The Court grants summary judgment in favor of the City. The City will not be liable for any potential awards of punitive damages.

## VII. Liability for Gregory's broken elbow

The City moves for partial summary judgment regarding any claim that its officers broke Gregory's elbow. (Doc. 43 at 30). Gregory admitted in her deposition that Officer Fisher was not responsible for breaking her elbow. (Doc. 44 at 6). Gregory fails to respond to the City's argument in her brief and so waives her opposition. *See Bowen v. Oistead*, 125 F.3d 800, 806 (9th Cir. 1997). The Court grants summary judgment to the City on this issue.

## ORDER

Accordingly, **IT IS ORDERED** that the City of Great Fall's Motion for Summary Judgment (Doc. 42) is **GRANTED, IN PART** and **DENIED, IN PART**.

Specifically, the City's Motion for Summary Judgement is **GRANTED** for the following claims and issues:

- Claims in Count IV of the Amended Complaint for alleged violations of the Montana Constitution's right to privacy and right to due process;

- Claims for negligent use of excessive force in Count V;

- The City is not liable for punitive damages; and

- The City is not liable for Gregory's broken elbow.

The City's Motion for Summary Judgment is **DENIED** for the following issues and claims:

- Claim for excessive force used in the arrest in Count II;

- Claims for negligent hiring, retention, training, supervision, and discipline in Count V;

- Claims for negligent arrest and seizure, negligent violation of constitutional, statutory, and common law rights, and negligent performance of official duties in Count V;

- Claim for negligent infliction of emotional distress in Count VII; and

- The issues of whether particularized suspicion supported Gregory's detention and whether probable cause supported Gregory's arrest. The jury will decide these questions.

Dated the 7th day of February, 2022.

_____
Brian Morris, Chief District Judge
United States District Court