# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MONTANA
## GREAT FALLS DIVISION

| | |
|---|---|
| CARRIE GREGORY,<br><br>                       Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA, CITY OF GREAT FALLS, PROBATION OFFICER TOMEKA WILLIAMS, REGION 3 DEPUTY CHIEF WAYNE BYE, GREAT FALLS POLICE OFFICER SCOTT FISHER, DOES 1-10,<br><br>                     Defendants. | **CV-20-51-GF-BMM**<br><br><br>**AMENDED ORDER REGARDING SANCTIONS** |

## INTRODUCTION

The Court issued an order on February 3, 2022, regarding the appropriate sanctions arising from spoliation of evidence. (Doc. 84.) The order followed a hearing on September 27, 2021, that addressed, among other matters, a Motion for Sanctions against Defendant State of Montana ("the State") filed by Plaintiff Carrie Gregory ("Gregory"). (Doc. 28.) The Court announced at the end of the hearing that it would grant Gregory's Motion for Sanctions. (Doc. 75.) The Court declined to delineate the sanctions at that point and instead directed the parties to meet and confer in an attempt "to agree on an appropriate sanction." (Doc. 98 at 83.) The

parties failed to agree and, as directed by the Court, filed simultaneous briefs regarding the appropriate sanction. (*Id.*) All parties filed briefs. (Docs. 77, 78, & 79).

The Court announced sanctions. (Doc. 84). The City and Officer Fisher filed a joint motion to amend the sanctions. (Doc. 89.) The Court directed all parties to file briefs to address the sanctions and the issues leading up to the spoliation of evidence. (Doc. 94.) Gregory filed a brief (Doc. 103), the City filed a brief (Doc. 100), Officer Fisher filed a separate brief (Doc. 101), and the State and Officer Williams filed a joint brief (Doc. 99). The Court conducted another hearing on the matter on March 3, 2022. The Court sealed its Order on Sanctions (Doc. 84) upon being notified before the hearing that Defendants City and Officer Fisher had reached a settlement with Gregory. This order accordingly focuses only on the State and Officer Williams.

## BACKGROUND

The State failed to preserve a copy of the security camera video of the parking lot of the office of the Montana Probation and Parole in Great Falls, Montana. The security camera video would have captured the events of May 15, 2020, when Gregory brought her son, Daniel Gregory, to the office that led to Daniel's arrest and alleged injuries to Carrie Gregory. Security cameras employed

by the Montana Probation and Parole Office captured the events at issue from several different angles. The City charged Gregory with misdemeanor obstruction.

Gregory's counsel in the obstruction case instructed Deputy Probation and Parole Chief Wayne Bye to preserve the video evidence captured on the security cameras. (Doc. 29-5 at 2.) The security system automatically deletes the videos after 17 days. (Doc. 29 at 9.) Deputy Chief Bye failed to preserve the video before the 17-day auto-deletion and instead used his cell phone to record a copy of the altercation as it played on his computer monitor. (Doc. 16 at 7.)

The City dismissed the obstruction charges against Gregory sometime after it had discovered that the State had failed to preserve the video. (*Id.* at 28, 30.) The City contends that it dismissed the obstruction charge because the Cascade County Attorney's Office intended to file felony charges against Gregory based on the incident. (Doc. 103 at 5.) The Cascade County Attorney's Office declined to file the felony charge upon learning of the destruction of the video. (*Id.* at 6.)

*Legal Framework*

A district court possesses inherent powers to control litigation, including the levying of sanctions for the spoliation of evidence. *Leon v. IDX Sys. Corp.*, 464 F.3d 951. 958 (9th Cir. 2006). A court may levy sanctions when a party knew, or should have known, that the spoliated evidence could prove relevant to a claim. *Glover v. BIC Corp.*, 6 F.3d 1318, 1329 (9th Cir. 1993). The imposition of

3

sanctions does not require bad faith by the offending party. *Glover*, 6 F.3d at 1329. Simple notice of the potential relevance to the litigation will suffice. *Id.*

The available sanctions include the following actions: 1) exclusion of evidence; 2) admission of evidence regarding the circumstances of the spoliation; or 3) instruction to the jury that it may infer that the spoiled evidence would have been unfavorable to the responsible party. *Id.* A court also possesses the authority to dismiss an action or enter a default judgment under appropriate circumstances. *Leon*, 464 F.3d at 958. These circumstances include a situation where the spoliated evidence relates to the matters in controversy in such a way that its spoliation threatens to interfere with the rightful decision of the case. *United States v. Nat'l Med. Enters., Inc.*, 792 F.2d 906, 912 (9th Cir. 1986).

A court's imposition of more drastic sanctions typically requires a finding of "willfulness, fault, or bad faith." *Leon*, 464 F.3d 958. A finding of any of these circumstances could "justify the sanction of dismissal [or entry of default]." *Halaco Eng'g Co. v. Costle*, 843 F.3d 376, 380 (9th Cir.  1988). As discussed in the caselaw, fault represents an amorphous concept not specifically defined. *Munoz-Santana*, 742 F.2d at 564. Fault differs from "willfulness" and "bad faith" and can serve as the basis for dismissal or default judgment on its own. *In re Slimick v. Silva*, 928 F.2d 304, 310 (9th Cir. 1990).

## ANALYSIS

The Court will focus its analysis on the issue of whether it may impose a sanction for spoliation of evidence by a defendant that affects the co-defendants. "The seminal case on this topic appears to be *Pettit v. Smith*, 45 F.Supp.3d 1099 (D. Ariz. 2014)." *Mizzoni v. Nevada*, No. 3:15-CV-00499-MMD-WGC, 2017 WL 4284597 (D. Nev. Sept. 27, 2017). The magistrate judge relied upon *Pettit* in extending sanctions against the defendants for the spoliation of video evidence by a non-party. *Mizzoni*, at *6.

An inmate at a Nevada prison filed a civil action against two guards at the facility. *Id.* at *4. The inmate had requested copies of video footage of the areas where the two incidents had taken place. Prison staff failed to preserve the videos before they were overwritten pursuant to the prison's policy. *Id.* No evidence existed that either defendant played any role in destroying the video. *Id.* at *6.

The magistrate judge imputed the conduct of the non-party state actors to the defendant guards. The prison could not be dismissed as a "disinterested third party." *Id.* The prison remained responsible for the training and conduct of its employees. *Id.* The state of Nevada, in turn, "indemnifies employees for damages for which they become legally responsible within the course and scope of employment." *Id.* These factors warranted a decision to impute the spoliation to the defendants. *Id.* The district court adopted the magistrate judge's findings and

5

recommendations in full in *Mizzoni v. Nevada*, No. 3:15-CV-00499-MMD-WGC, 2018 WL 485873 (D. Nev. Jan. 19, 2018).

Similar circumstances arose in *Pettit*. A prisoner at an Arizona state prison alleged that two guards violated his Eighth Amendment rights by using excessive force when escorting the inmate from the shower to his cell. *Pettit*, 45 F.Supp.3d at 1102. The inmate eventually filed an action against the two guards and requested the video footage. *Id.* at 1103-04. The video footage, along with other items of potential evidence, had been destroyed or overwritten. *Id.* at 1104. The district court determined that the state of Arizona, through the prison officials, had been responsible for the spoliation of the evidence. *Id.* The district court recognized that the duty to preserve evidence "extends to the period before litigation when a party should reasonably know that evidence may be relevant to anticipated litigation." *Id.* at 1106 (quoting *Surowiec v. Capital Title Agency, Inc.*, 790 F.Supp.2d 997, 1005 (D. Ariz. 2011)).

The district court squarely addressed the defendants' claims that neither defendant had been responsible for loss or destruction of any of the evidence as the evidence had been lost or destroyed while in the hands of the non-party prison officials. *Id.* at 1108. The defendants argued that a sanction against them for the conduct of the prison officials would violate the sovereign immunity granted to Arizona by the Eleventh Amendment. *Id.* at 1109. The case did not involve a

situation, however, "where the requested imputation would effectively establish the State's violation of Plaintiff's constitutional rights and subject it to an award of damages." *Id.*

The district court "took no comfort" in the notion that the witnesses for the defendants could testify about the events at trial. *Id.* By contrast, the video camera would have been "an objective witness that bore neither the potential pro-defense leanings of the defense witnesses nor the credibility problems of Plaintiff" due to his record of convictions. *Id.* The video recording "would have allowed the jury, the arbiter of the facts, to see the actual events unfolding and make its own collective assessment" as the reasonableness of the force used. *Id.* (quoting *Peschel*, 664 F.Supp.2d at 1145); *see also Kounelis v. Sherrer*, 529 F.Supp.2d 503, 521 (D. N.J. 2008) (noting unfairness of "putting the word of a convicted felon against the collective testimony of the prison authorities" in imposing adverse inference instruction based on destruction of video).

*Pettit* and *Mizzoni* support the imputation of spoliation to Officer Williams whose employer, the State, stands responsible for the loss of the video. Similar to the prison guard defendants in those cases, the State "indemnifies employees for damages for which they become legally responsible within the course and scope of employment." *Mizzoni*, at *6; *see also* Mont. Code Ann. § 2-9-305(2). Defendants point to *Peters v. Cox*, 341 F.Supp.3d 1192 (D. Nev. 2018), to argue against

imputing the State's spoliation to Officer Williams. There the plaintiff inmate sued a certified nursing assistant who worked for the Nevada Department of Corrections following an encounter in the pill call line. The prison officials allowed the video to be deleted despite the plaintiff's request for a copy. The plaintiff asked the magistrate judge for sanctions against the employee in the following form: "a conclusive presumption that the attack by the defendant was malicious and oppressive, done with reckless disregard of the near certain consequences and that the attack was the cause of the loss of internal fixation (working the screws loose) and the subsequent surgery." *Id.* at 1194. The district court agreed with the magistrate that imputation of the spoliation to the employee would be inappropriate where the plaintiff had "made no showing that [defendant] was involved in or had any authority over those involved in the actual destruction of the video." *Id.*

Unlike the employee in *Peters*, Officer Williams knew of the video's existence and had access to the surveillance monitor. Counsel for Gregory originally requested a copy of the video from the City during the obstruction case against Gregory. (Doc. 100, Ex. 2 at ¶¶ 1 & 9). Correspondence between the parties indicates that the City, the State, Officer Williams, and City police officers knew of the video's existence and Gregory's request to obtain it. (Doc. 100, Ex. 2 at ¶¶ 1, 3, 8, 9). In fact, a City police officer contacted Officer Williams on May 19, 2020, regarding the video. *Id.*, at ¶ 6. Officer Williams had access to the

8

surveillance footage of the incident as it was physically located in her office. (Doc. 102, Ex. 1 at 2-3). Officer Williams was not merely a "disinterested third party." *Mizzoni*, 2017 WL 4284597 at *6.

The district court in *Woods v. Scissons*, No. CV-17-08038-PCT-GMS, 2019 WL 3816727 (D. Ariz. Aug. 14, 2019), faced a similar dilemma in the context of an arrest. The plaintiff brought an excessive force claim against a police officer arising out of his arrest. The plaintiff alleged that the officer placed him in handcuffs and preceded to strike plaintiff several times while he lay face-down on the pavement. *Id.* at * 1. The plaintiff sued the officer and sought spoliation sanctions when the non-party City of Prescott violated a duty to preserve dashboard video of the incident by allowing the footage to be deleted automatically from the police department's system. *Id.* at *2.

The district court characterized the City of Prescott as "not merely a disinterested non-party." *Id.* at *17. The City of Prescott was obligated to pay any judgment against the defendant. *Id.* This incentive for preserving the evidence put the City of Prescott in "the same functional position as other parties subject to sanctions for spoliation." *Id.* (citing *Pettit*, 45 F.Supp.3d at 1106). The district court also recognized the concern of incentivizing the City of Prescott to destroy evidence in future cases if no sanction was imposed. *Woods*, at *17. The concern

of an "unjust result" further prompted the district court to impute the spoliation to the defendant officer. *Id.* at *18.

Officer Williams focuses largely on her lack of responsibility to have preserved the video. Officer Williams cites to *Emery v. Harris*, No. 1:10-CV-01947-JLT PC, 2014 WL 710957 (E.D. Cal., Feb. 21, 2014), to argue that any spoliation sanctions against remain improper because Officer Williams never retained possession of the surveillance footage. (Doc. 99 at 7-8). In *Emery*, the California Department of Corrections and Rehabilitation failed to preserve the video footage of a prison employee's alleged use of excessive force. *Emery,* 2014 WL 710957 at *1.  The court in *Emery* declined to impose sanctions on the individual employee when the plaintiff failed to show that the employee had control over the footage but had only the authority to request a copy of the footage. *Id.* at *7. The court noted that placing such responsibility to preserve evidence on a prison correctional officer would result in impacts on the officer's ability to seek other employment, obtain security clearances, obtain a concealed weapons permit, obtain mortgages, and further subject him to criminal liability. *Id.* at 12. *Emery* is distinguishable.

As an initial matter, imposing sanctions on Officer Williams would not likely impact her ability to seek employment, subject her to criminal liability, or any of the other cautions highlighted in *Emery*. *Id.* Furthermore, the record

demonstrates that Officer Williams had control of the surveillance footage. The footage was located in her office and correspondence demonstrates that she was involved in seeking to obtain a copy of the footage for the City. (Doc. 102, Ex. 1 at 2-3 of 7; Doc. 102, Ex. 3 at 5). Officer Williams maintained more authority over the footage in this case than the correctional officers in *Emery*. Imputing a spoliation order over Officer Williams for the conduct of the State fails to "threaten the integrity of the judicial system." *Emery*, 2014 WL 710957 at *12; *see also Ramos v. Swatzell*, No. ED CV 12-1089-BRO (Spx), 2017 WL 2857523, at *7 (C.D. Cal. June 5, 2017) (imputing spoliation by employer to employee "to avoid unfair prejudice to the plaintiffs"); *Muhammad v. Mathena*, 2016 WL 8116155, at *7-8 (W.D. Va. Dec. 12, 2016) (finding "imputation of [non-party institution's] negligent spoliation to the Defendants is necessary here in order to avoid unfair prejudice to [plaintiff]").

The Court recognizes that its sanction effectively grants summary judgment to Gregory on the issue of unreasonable force. The Court has considered carefully the analysis of *Halaco Engineering*, 843 F.3d at 380 and *Leon*, 464 F.3d at 958. The application of these factors by the court in *Peschel v. City of Missoula*, 664 F.Supp.2d 1137 (D. Mont. 2009), supports this remedy. The City of Missoula in *Peschel* failed to preserve video recordings of an arrest that resulted in a series of injuries to the plaintiff. The court concluded that the City of Missoula had a duty

11

under Montana law to preserve video recordings throughout the course of an investigation when the prospect of a civil suit was "reasonably foreseeable." *Peschel*, 664 F.Supp.2d at 1145. The City of Missoula had proposed as a sanction prohibiting "the officers from testifying as to what they saw on the video." *Id.* The court rejected this proposed sanction as not sufficiently punishing the City of Missoula for its spoliation and not serving "as a sufficient disincentive to destroy evidence." *Id.* at 1148. The court instead determined that a conclusive finding regarding the arresting officers' use of unreasonable force constituted the most appropriate sanction. *Id.* at 1145. A similar sanction proves appropriate here.

The Court's sanction falls short of the request in *Peters* for a conclusive presumption that the employee's alleged attack "was malicious and oppressive, done with reckless disregard of near certain consequences" and that the attack caused plaintiff's injuries. *Peters*, 341 F.Supp.3d at 1194. The Court's sanction reserves to the jury the questions of causation, injury, and damages. The jury also will decide whether Officer Williams acted with actual malice. These sanctions attempt to strike a balance between an appropriate remedy to Gregory for the loss of the video and Officer Williams's right to trial by jury. *Cf. Peters*, 341 F.Supp.3d at 1194 (declining to impute sanctions to avoid forfeiting defendant's right to trial by jury where plaintiff made no showing that defendant was involved in of the alleged destruction of the video).

12

The Court analyzes each factor from *Halaco Engineering* and *Leon* in turn in support of its sanctions.

### 1.  The Existence of Extraordinary Circumstances.

The State's spoliation of the security camera videos severely disrupted the orderly administration of justice. A simple case now has grown complicated due to the State's spoliation of the video recordings. The fact-finder could have watched the videos as part of its determination of the level of force used to effectuate Gregory's arrest. The spoliation irreparably has jeopardized the accuracy of the fact-finding process to the prejudice of Gregory. Imposition of a lesser sanction would cause the trial to become divorced from the merits and focused instead upon the spoliation. *Peschel*, 664 F.Supp.2d at 1146.

### 2.  The Presence of Willfulness, Bad Faith, or Fault by the Offending Party.

Gregory argues that the evidence surrounding the spoliation of the security camera video recordings supports the conclusion that the spoliation arose from gross negligence on the part of the State and its employees. Gregory cannot sustain her burden to establish gross negligence or willfulness on the part of the State. The Court concludes, however, that the evidence supports a determination that the spoliation arose from recklessness on the part of the State in failing to take appropriate steps to preserve the recordings before they were deleted. *Peschel*, 664 F.Supp.2d at 1146-47. The State possessed sufficient resources and technological

acumen to determine how to have preserved the video. The Court rejects out of hand the State's claim that the effort by Deputy Chief Bye to record the security videos on his cell phone while watching the videos on his monitor provides Gregory with an adequate substitute.

### 3.  The Efficacy of Lesser Sanctions.

The Court must analyze the feasibility of less drastic sanctions and provide a reasonable explanation as to why these alternative sanctions would be inappropriate. *Halaco Eng'g*, 843 F.2d at 381; *Leon*, 464 F.3d at 960. The proposed instruction offered by Defendants would direct the jury to infer that the spoliated video recording would have been unfavorable to the State. *Med. Lab'ys Mgmt. Consultants v. Am. Broad. Cos., Inc.*, 306 F.3d 806, 824 (9th Cir. 2002). The rebuttable presumption created by the adverse inference instruction would not punish the State sufficiently for its spoliation or serve as a deterrent in future cases. The State would be permitted to proceed to trial where it would pit its witnesses against Gregory, "unphased by its spoliation of the video recording." *Peschel*, 664 F.Supp.2d at 1148. The rebuttable presumption instruction also would fail to cure the prejudice to Gregory from the loss of the best evidence of what happened during her arrest. *Id.*

The Court further notes that the proposed adverse inference instruction would be effective only if coupled with the admission of the spoliation itself.

14

*Peschel*, 664 F.Supp.2d at 1148. To allow the admission of evidence regarding the spoliation would force the jury to focus on computer forensics rather than the merits of the case. *Id.* This inquiry also would require evidence relating to the computer capabilities of Deputy Chief Bye and Officer Williams and their purported motives to allow the recordings to be deleted. Introduction of evidence of these matters would degrade the truth-finding process. *Id.*

### 4. The Relationship or Nexus Between the Misconduct and the Matters in Controversy.

The question of whether the misconduct to be penalized in this case relates "to matters in controversy in such a way as to interfere with the rightful decision of the case" represents the most critical criterion. *Halaco Eng'g*, 843 F.2d at 381. No dispute exists that the spoliation of the security camera recordings relates to the principal matter in controversy: whether the arresting officers used unreasonable force to arrest Gregory. The video recordings would have provided the best evidence of what happened during the incident in the parking lot and arrest of Gregory. Spoliation of the video recordings directly has interfered with the rightful outcome of this case and weighs in favor of the Court's sanctions. *Peschel*, 664 F.Supp.2d at 1147.

### 5. The Prejudice to Gregory.

The prejudice inquiry "looks to whether the [spoliating party's] actions impaired [the affected party's] ability to go to trial or threatened to interfere with

15

the rightful outcome of the case." *Leon*, 464 F.3d at 959. The injuries allegedly suffered by Gregory suggest that the degree of force used by the officers during the arrest may have been more than necessary under the circumstances. In the absence of the video recording to establish this fact, Gregory would be left with the difficult task of rebutting the testimony of the various officers that the force proved reasonable under the circumstances. *Id.*

**6. Public Policy Favoring Disposition of Cases on Their Merits.**

Public policy normally favors disposition of cases on their merits. *Payne v. Exxon Corp.*, 121 F.3d 503, 507 (9th Cir. 1997). This policy provides little weight here. The public also possesses a strong interest in the fair and accurate resolution of disputes that arise from encounters between law enforcement officers and the public. *Peschel*, 664 F.Supp.2d at 1147. The security camera recordings would have provided the best evidence of what happened during Gregory's arrest. The spoliation removes this best evidence and thereby hinders the most accurate determination of this case on its merits. The factor weighs in favor of the selected sanction. The Court agrees with *Ramos* that the mere possibility of an award of punitive damages against Officer Williams proves "insufficient to make it unfair impute the spoliation to [the defendant]"). *Ramos*, at *6.

The Court concludes that sanctions more substantial than an adverse inference instruction would be appropriate.

## ORDER

Accordingly, **IT IS ORDERED** that Plaintiff's Motion for Sanctions Against State of Montana (Doc. 28) is **GRANTED**. The sanctions imposed the State include the following actions:

1. Officer Tomeka Williams used unreasonable force in the seizure of Carrie Gregory;

2. The Court will not permit testimony about the original video's contents before spoliation;

3. The Court reserves to the jury issues of causation, injury, and damages;

4. The Court reserves to the jury the issue of whether Officer Williams acted with actual malice; and

5. The Court will not allow the parties to present Deputy Chief Bye's cell phone recording of the video to the jury.

Dated the 11th day of March, 2022.

Brian Morris, Chief District Judge
United States District Court