IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
GREAT FALLS DIVISION

| | |
|---|---|
| CARRIE GREGORY,<br><br>                Plaintiff,<br><br>vs.<br><br>STATE OF MONTANA, and PROBATION OFFICER TOMEKA WILLIAMS,<br><br>                Defendant. | CV-20-51-GF-BMM<br><br>ORDER RE: ATTORNEY'S FEES |

**INTRODUCTION**

Plaintiff Carrie Gregory ("Gregory") has filed a Motion for Attorney's Fees and Costs (Doc. 153). Plaintiff asks this Court to award $160,250 in attorney's fees and $21,615 in costs, for a total of $181,865.47. (*Id.*) Gregory asks for this amount in addition to the jury's award of $75,000, for a total judgment of $256,865.47 against the State of Montana ("the State") and Probation Officer Tomeka Williams ("Williams") (collectively, "Defendants"). (*Id.*) Williams has filed a Motion for Offset of Settlement Paid by Joint Tortfeasor (Doc. 165). Williams moves for a *pro tanto* offset of the judgment against her in the amount of the settlement paid by the

City of Great Falls and Officer Scott Fisher. *Id.* The Court held a hearing on the matter on June 23, 2022. (Doc. 189).

## BACKGROUND

This case arises from the events that took place in the Montana Probation and Parole parking lot in Great Falls, Montana on May 15, 2020. (Doc. 154 at 2). Gregory had brought her son, Daniel, to the Probation and Parole office for officers to arrest him. (*Id.*) Williams approached Gregory and forced her onto the hood of a car while officers were arresting Daniel. (*Id.*) Gregory claimed that she suffered injuries to her wrist and elbow from this encounter. (*Id.*) Great Falls Police Officer Scott Fisher then forced Gregory to his police cruiser, where Gregory alleged that Officer Fisher's aggressive move injured her knee. (*Id.*) The City of Great Falls initially charged Gregory with misdemeanor obstruction. (*Id.*)

Surveillance cameras captured the events in the parking lot. (*Id.*) The Montana Probation and Parole office failed to save the original footage even after Gregory's attorneys demanded that Montana Probation and Parole save the video. (*Id.*) Deputy Chief Wayne Bye recorded the video on his cell phone before the video was automatically erased from the system as part of a periodic erasure of the system. (*Id.*) The City of Great Falls dropped the charges against Gregory. (*Id.*)

The Court issued an Amended Order Regarding Sanctions (Doc. 110) ("Sanctions Order") stemming from the spoliation of the video footage. The Court

imposed the following sanctions against the State: Williams used unreasonable force in the seizure of Gregory; testimony about the original video's contents was not permitted; the jury was to decide issues of causation, injury, and damages; the jury was to decide whether Williams acted with actual malice; and the Court would not allow the parties to present evidence of Deputy Chief Wayne Bye's cell phone recording. (Doc. 110 at 17).

The City of Great Falls and Officer Fisher settled with Gregory for $35,000 before trial. (Doc. 168 at 3). The Court eventually allowed the cellular telephone recording of the footage to be presented to the jury at trial after the State's witness made several references to the video during her testimony despite the Court's admonishment to the State's counsel before the witness testified. The Court instructed the jury to consider only the conduct of Williams in their deliberations. *See generally* (Doc. 143).

The jury awarded Gregory $75,000 at trial for her claim against Williams for use of excessive force under 42 U.S.C. § 1983. (Doc. 145). The jury found in favor of Williams on Gregory's negligent infliction of emotional distress claim. (*Id.*) The jury awarded Gregory no punitive damages. (*Id.*)

## ANALYSIS

**I.   Gregory's Motion for Attorney's Fees (Doc. 153)**

Gregory asks this Court to award $160,250 in attorney's fees and $21,615.47 in costs, for a total of $181,865.47. (Doc. 154). Pursuant to the Civil Rights Attorney's Fees Award of 1976, a court, in its discretion, may allow a party prevailing on a claim under 42 U.S.C. § 1983 to recover "reasonable attorney's fees as part of the costs."  42 U.S.C. § 1988(b). A court retains "narrow" discretion to deny fees under § 1988. *Mendez v. County of San Bernadino*, 540 F.3d 1109, 1126 (9th Cir. 2009), overruled on other grounds by *Arizona v. ASARCO LLC*, 773 F.3d 1050 (9th Cir. 2014). Fee awards exist as the rule rather than the exception. *Id.*

### a.   Whether Gregory succeeded on the merits

The Court first must address Williams's argument that Gregory retains no right to recover attorney's fees as she failed to succeed on the merits of her claims. (Doc. 167 at 5-8). Williams asserts that Gregory cannot obtain attorney's fees as she cannot first establish that she was the "prevailing party." (*Id.* at 6); *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). Williams argues that the jury's verdict in this case arose directly from the Court's Sanctions Order that penalized Defendants for failing to save the video footage of the events on May 15, 2021. (Doc. 167 at 6-8).

Section 1988 of Title 42 allows a prevailing party to recover reasonable attorney's fees in a § 1983 action. 42 U.S.C. § 1988(b). A court may consider plaintiffs as the "prevailing party" for the purposes of attorney's fees if they "succeed on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit." *Hensley*, 461. U.S. at 433, (citing *Nadeau v. Helgemoe*, 581 F.2d 275, 278-79 (1st Cir. 1978)). A plaintiff ordinarily would not be entitled to fees if they prevail based solely on a procedural or evidentiary ruling. *Mantolete v. Bolger*, 791 F.2d 784, 786 (9th Cir. 1986) (citing *Hanrahan v. Hampton*, 446 U.S. 754, 759 (1980). A plaintiff must establish entitlement to "some relief on the merits of [her] claims." *Id.* (quoting *Hanrahan*, 446 U.S. at 757). A determination of "the substantial rights of the parties" must have been rendered. *Id.* Where a plaintiff's success on the legal claim stands as purely technical or de minimis, a court may decline to conclude plaintiff has maintained status as the "prevailing party." *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989).

The Court's Sanctions Order specified that Williams had used unreasonable force in the seizure of Gregory, that testimony regarding the original contents of the video before spoliation was not allowed at trial, and that the parties were not allowed to present Deputy Chief Bye's cell phone recording of the video to the jury. (Doc. 110 at 17). Notably, the Court reserved to the jury issues of causation,

injury, and damages. (*Id.*) The case stood the test of an extensive three-day trial. Gregory maintained the burden of proving her case without the benefit of the original video. Defendants called numerous law enforcement officers to provide testimony of the events that transpired in the Montana Probation and Parole parking lot, none of whom were subjected to cross-examination with contents of the original video.

Furthermore, the Court implored the parties to inform their witnesses to refrain from mentioning the original video to limit confusion for the jury. Even after such warning to the parties, a witness called by the State mentioned the video in her testimony. (Doc. 170, Trial Tr. vol. 2, 265:9). After the jury heard evidence regarding the contents of the original video, the Court elected to show the cellular telephone video to the jury with a limiting instruction. The limiting instruction stated to the jury that they "may infer, but [were] not required to infer" that the lost surveillance video would have been favorable to Gregory. (Doc. 143 at 5). The limiting instruction also noted that the video taken by the cellular telephone of the monitor in the Montana Probation and Parole Officer of the original surveillance footage was inferior to the original. (*Id.*) The Court again instructed the jury that they "may, but [were] not required to infer, that any ambiguities in the cellular telephone video may be construed in favor of the Plaintiff." (*Id.*)

6

The jury reached a verdict based on all the evidence, including the cellular telephone footage of the monitor of the original video. The jury was not required to construe the events in Gregory's favor. The jury nonetheless awarded Gregory $75,000. Gregory did not merely succeed on "technical" or "de minimis" grounds as Williams suggests. *Tex. State Teachers Ass'n*, 489 U.S. at 792-93. Gregory likewise did not prevail merely on "procedural" or "evidentiary" grounds. *Mantolete*, 791 F.2d at 786. Gregory remains entitled to attorney's fees and costs under § 1988.

### b. Attorney's fees

Gregory asks this Court to award $160,250 in attorney's fees. *See* (Docs. 153 & 154). Gregory also insists that this Court should award additional attorney's fees for ongoing work after trial, for a total attorney's fees award of $170,350. (Doc. 174 at 5). The hybrid lodestar multiple approach determines whether an award of attorney's fees proves reasonable under § 1988. *Van Gerwen v. Guarantee Mutual Life Co.*, 214 F.3d 1041 (9th Cir. 2000) (citation omitted).

The approach contains a two-part analysis. First, a court multiplies the number of hours reasonably expended on the litigation by a reasonable hourly rate. *Id.* at 1045, (citing *Hensley*, 461 U.S. at 433-34). This calculation determines the lodestar amount. *Id.* The party seeking attorney's fees must submit documentation of the hours worked and the rates used. *Id.* Second, the court may adjust the

lodestar using a "multiplier" based on factors not considered when calculating the lodestar. *VanGerwen*, 214 F.3d at 1045 (citation omitted). The lodestar amount stands as the presumptive reasonable fee amount and courts should lower it only in "rare" and "exceptional" cases *VanGerwen*, 214 F.3d at 1045 (citations omitted). The Court need not achieve "auditing perfection" or become "green eyeshade accountants." *Fox v. Vice*, 563 U.S. 826, 838 (2011). Rather, the Court can take into account its "overall sense of a suit" and use estimates in its calculations. *Id.*

### i. Lodestar amount

Gregory has submitted a timesheet that documents 755.15 total attorney hours spent on the case. (Docs. 154-1 & 154-2). Counsel for Gregory has estimated that they have spent 641 hours on the State of Montana portion of the case. (Doc. 154-2). At an hourly rate of $250, Gregory asserts that $160,250 in attorney's fees proves reasonable. (Doc. 154 at 8-13).

Williams argues that Gregory has failed to support her fee request with satisfactory evidence to establish a reasonable rate. (Doc. 167 at 8-11). To determine a lodestar figure, a party must submit "satisfactory evidence . . . that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." *Blum v. Stenson*, 465 U.S. 886, 895-96 (1984). A court should look to the "prevailing market rate in the community" to compute the lodestar amount.

*Gonzales v. City of Maywood*, 729 F.3d 1196, 1206 (9th Cir. 2013). The forum in which the district court sits represents the relevant community to determine a reasonable hourly rate. *Id.* (citations omitted). Within the community, a court should consider the "experience, skill, and reputation of the attorney." *Id.*

Satisfactory evidence of prevailing market rates includes rate determinations in other cases and affidavits that establish customary or prevailing fees of counsel of comparable qualifications. *Id.* at 1207, *Chalmers v. Los Angeles*, 796 F.2d 1205, 1214-15 (9th Cir. 1986). A court may look to rates outside the forum "if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required" to properly handle the case. *Barjon v. Dalton*, 132 F.3d 496, 500 (9th Cir. 1997) (quoting *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992)) (internal quotation marks omitted). In addition to the prevailing market rate, a court determining the hourly rate for successful civil rights attorneys may also consider the novelty and difficulty of the issues, the skill required to try the case, whether the fee is contingent, counsel's experience, and fee awards in similar cases. *Moreno v. City of Sacramento*, 534 F.3d 1106, 1114 (9th Cir. 2008) (citing *Hensley*, 461 U.S. at 430 n.3).

Gregory provides affidavits from her counsel, Paul Gallardo and Daniel Flaherty. (Docs. 154-3 & 154-4). These affidavits state that counsel "believes" that

their hourly rate stands consistent with billing rates for Montana attorneys with a "commensurate level of experience and expertise." (*Id.* at ¶ 5). In addition to these affidavits, Gregory has provided caselaw that deems $275-$375 as reasonable attorney's fees in the area. *See Gendron v. Mont. Univ. Sys.*, 461 P.3d 115, 118 (Mont. 2020). Gregory also provides examples of Montana District Courts holding that hourly rates of $350 prove reasonable. *See, e.g.*, *King v. Geico Ins. Co.*, No. CV-12-92- BLG-RWA, 2014 WL 1789460, at *3-4 (D. Mont. 2014). Whether the cited cases stand factually or legally similar to this case, or whether the experience and skill of the attorneys in those cases compare to the level of skill of the attorneys in this case, these issues carry minimal weight in the Court's analysis. The requested hourly rate of $250 in this case is significantly lower than rates this District and other courts in Montana have determined as reasonable. *See Gendron*, 461 P.3d at 118; *King*, 2014 WL 1789460, at *3-4.

Gregory also has provided an affidavit and expert testimony from Jakob Norman, an attorney residing in Big Sky, Montana, who conducts trial skills seminars for trial lawyers throughout the country. (Doc. 145-4). Norman has litigated several § 1983 excessive force and use of force cases. (*Id.* at ¶ 5). Although Norman retains licenses to practice only in Wyoming and Colorado and has not been admitted *pro hac vice* in Montana, Norman states in his affidavit his familiarity with hourly rates of Montana attorneys with a commensurate level of

experience and expertise in in the field of civil rights and personal injury litigation. (*Id.* at ¶¶ 9, 14). Importantly, Norman acknowledges that the $250 hourly rate "is on the lower end of what is consistent with said hourly rates," and proves appropriate given the nature of the case, the issues, and the result accomplished. (*Id.* at ¶ 14). Norman attests that the $250 hourly rate proves reasonable. (*Id.* at ¶ 15). The Court determines that Gregory's $250 hourly fee is reasonable.

The Court next must determine whether the hours billed by Gregory's counsel prove reasonable. Williams challenges specific time entries on Gregory's submitted time sheets (Docs. 154-1 & 154-2). (Doc. 167 at 12-17). A court should exclude "excessive, redundant, or otherwise unnecessary" hours. *Hensley*, 461 U.S. at 434. Where a plaintiff presents a lawsuit with different claims based on different facts and legal theories – even where the plaintiff brings the claims against the same defendants – counsel's work on one claim stands "unrelated to his work on another claim." *Id.* at 434-35. Hours billed for such unrelated, unsuccessful claims do not correspond to the result achieved, and a court may not award fees for these claims. *Id.* at 435.

The timesheets submitted by Gregory's counsel include 7.8 billed hours for criminal defense work stemming from Gregory's dismissed state court charges for assault on an officer. (Doc. 14-2 at 1). Although some entries relate to communications with Deputy Chief Bye regarding preservation of the surveillance

11

footage at Montana Probation and Parole, this work centers primarily around Gregory's criminal defense case. Counsel's criminal defense work up to June 10, 2020, fails to relate to Gregory's § 1983 claims. The Court excludes these 7.8 hours from the lodestar amount.

Gregory filed her initial Complaint (Doc. 1) alleging § 1983 claims against the individual officers, the City of Great Falls and the State. Gregory's § 1983 claims maintained no legal basis as the State does not qualify as persons for purposes of § 1983. *See Arizonans for Official English v. Arizona*, 520 U.S. 43, 69 (1997). Even after filing her Amended Complaint (Doc. 16), Gregory asserted baseless § 1983 claims against the City of Great Falls and the State. Gregory also added claims in her Amended Complaint for negligence, assault and battery, and negligent infliction of emotional distress. (Doc. 16). The Court dismissed the § 1983 claims against the State after an unopposed motion. (Docs. 17 & 21). Gregory's success at trial arose solely from her § 1983 claim against Williams, which she alleged in her initial Complaint (Doc. 1). The Court excludes the 11.9 hours spent on Gregory's Amended Complaint (Doc. 16) from the lodestar amount given the lack of necessity.

Counsel for Gregory logged 53.1 hours in defending numerous meritless claims against summary judgment. The Court granted summary judgment in favor of the State on Gregory's violations of her rights to privacy and due process under

the Montana Constitution, negligent training, negligent supervision, negligent hiring, negligent use of force and negligent use of excessive force, and negligent retention and discipline of officers. (Doc. 88). The Court granted summary judgment on all claims against Deputy Chief Bye and significantly reduced claims against Williams. (Doc. 86). The claims at trial included only a § 1983 claim and a negligence claim. The claims dismissed on summary judgment before trial prove excessive, redundant, and unnecessary. *Hensley*, 461 U.S. at 434. Many of Gregory's unsuccessful claims decided on summary judgment did not relate to the conduct of Williams and proved irrelevant to the result achieved. *Id.* at 435. The Court reduces that the hours spend on summary judgment briefing by 33.1 hours, leaving 20 hours to the lodestar from summary judgment briefing.

Gregory has billed 19.5 hours for services of expert Edward Obayashi. (Doc. 154-1). Gregory retained Obayashi in part to opine on use of force. (Doc. 56 at 8). As the litigation played out, Obayashi's services proved unnecessary. Obayashi neither appeared at trial nor contributed to Gregory's success at trial. The Court excludes the 19.5 hours work relating to the expert testimony of Obayashi.

The Court has reduced Gregory's 641 requested hours by 72.3 hours so far, leaving 568.7 billed hours for the lodestar. Of the remaining 568.7 hours, Gregory logged 399.2 hours before dismissal of the City of Great Falls and Officer Fisher. (Doc. 154-1). Gregory already has reduced the billable hours that attribute solely to

13

the City of Great Falls and Fisher. (Doc. 154 at 11). For the remaining hours that the Court has not yet excluded that also attribute to all parties in the case, Gregory asks this Court to apportion the amount attributed to the State and Williams at 75%. (*Id.*) Gregory bases her approach in calculating the apportionment amount on "what work and time would have been performed if the City and Officer Fisher were not defendants in this case." (*Id.*) This position fails to take into consideration the work performed when the City of Great Falls and Fisher were defendants. Gregory's hours and time spent before the dismissal of the City of Great Falls and Fisher was against all Defendants. The Court determines that a 50% apportionment for the 399.2 billable hours attributed to all Defendants proves reasonable. Williams and the State stand responsible for 199.6 hours attributed to all Defendants before dismissal of the City of Great Falls and Fisher. After apportionment, the Court excludes 199.6 hours.

In total, the Court reduces the requested lodestar hour amount by 7.8 hours for Gregory's criminal defense work, 11.9 hours for the Amended Complaint, 33.1 hours for unsuccessful summary judgment briefing, 19.5 hours for expert Obayashi, and 199.6 after apportionment of the remaining hours related to all defendants. The Court determines that 369.1 hours proves reasonable for the lodestar hour amount calculation. The total lodestar figure is $92,275.

### ii. Lodestar adjustment

The court has a duty to determine whether the hours and rates prove "reasonable" using the following twelve-factor analysis: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Hensley*, 461 U.S. at 430 n.3. The Court addresses the relevant factors.

### 1. The novelty and difficulty of the questions.

Courts do not consider § 1983 claims for unreasonable use of force particularly difficult or novel. *See Wyatt v. Owens*, No. 7:14-cv-492, 2018 U.S. Dist. LEXIS 235871, at *26-27, (W.D. Va. January 23, 2018). No particularly novel or difficult issues of fact and law surrounding the § 1983 and negligence claims exist in this case.

### 2. Whether the fee is fixed or contingent.

Gregory filed an amended fee agreement on March 12, 2022, in which she agreed to pay her counsel the higher of 33.33% of a judgment or an hourly fee. (Doc. 111). Although her original agreement specified a 40% fee after trial, her most recent fee arrangement captures the purpose of the fee-shifting model in § 1988.

### 3. The amount involved and the results obtained.

Where a plaintiff has achieved only partial or limited success, the number of hours expended on the litigation as a whole may represent an excessive amount. *Hensley*, 461 U.S. at 436. The jury awarded Gregory $75,000 on her § 1983 claim for unreasonable force. Notably, aside from Gregory's § 1983 claim against Williams and infliction of emotional distress against the State, all of Gregory's claims brought in her Amended Complaint had been dismissed before trial. Gregory also prevailed solely on her § 1983 claim against Williams. While Gregory obtained a favorable judgment, she nonetheless has achieved only partial success on her claims.

### 4. The experience, reputation, and ability of the attorneys.

Williams argues that Gregory's attorneys fail to represent that they are "without questions at the top of their field." *See Valenzuela v. City of Anaheim*, No. SACV 17-00278-CJC, 2020 U.S. Dist. LEXIS 257698 at *54 (C.D. Cal.,

March 11, 2020). Gregory's attorney's do not ask, however, for the same rates as attorneys at the top of their field. Gregory's attorney's hourly rates at $250 remain at the "lower end." (Doc. 154-5 at ¶ 14).

Taken the relevant factors, along with the hours the Court already has reduced from the lodestar amount, the Court awards $92,275 in attorney's fees to Gregory.

### c. Costs

A court may award costs in addition to attorney's fees to a prevailing party in a civil case. Fed. R. Civ. P. 54(d)(1). Section 1988, however, does not provide for shifting expert fees for § 1983 actions. *See* 42 U.S.C. § 1988(c). Gregory requests that this Court award $18,812.50 in costs for expenses incurred from the use of expert Edward Obayashi. Section 1988 provides Gregory no grounds to recover Obayashi's costs. Moreover, Obayashi neither contributed to the success at trial nor appeared at trial. The Court excludes $18,812.50 from its award of costs to Gregory. The Court awards Gregory $2,802.97 in costs.

## II. Williams's Motion for Offset of Settlement Paid by Joint Tortfeasor (Doc. 165)

Williams asserts that this Court should reduce *pro tanto* the amount of the $75,000 judgment against Williams by the $35,000 settlement that Gregory obtained against the City and Officer Fisher. (Doc. 168). When a joint tortfeasor settles with a plaintiff, the plaintiff's recovery against the remaining tortfeasor "is

to be reduced dollar-for-dollar by the consideration paid by the settling tortfeasor." *Jim's Excavating Serv. v. HKM Assocs.*, 878 P.2d 248, 260 (Mont. 1994). A court may offset a judgment by a settlement amount only when joint tortfeasors cause a single "indivisible" harm. *Id.* (quoting *Azure v. City of Billings*, 596 P.2d 460, 468 (Mont. 1979).

Williams argues that while Gregory's Amended Complaint distinguished between alleged injuries to her elbow and knee, she made no distinction as to the tortfeasor who caused injury to her wrist. (Doc. 168 at 4). Gregory's Amended Complaint clearly states that "Williams fractured Plaintiff's left elbow and sprained her left wrist." (Doc. 16 at ¶ 17). Williams also argues that Gregory's § 1983 claim was decided based on a "continuous series of events in which all defendants were alleged to have participated." (*Id.* at 4-5). The Court instructed the jury, however, to consider only Williams's conduct when determining an award. *See* (Doc. 143). The Court instructed the jury to determine whether Gregory "was injured as a result of Defendant Williams's use of excessive force." (*Id.* at 8). As such, the jury rendered an award based only on Williams's conduct. The harms caused by Fisher and Williams remain distinct. The Court declines to offset the judgment amount.

18

**ORDER**

Accordingly, **IT IS ORDERED** that Gregory's Motion for Attorney's Fees (Doc. 153) is **GRANTED, in part, and DENIED, in part.**

1. The Court awards Gregory $92,275 in attorney's fees and $2,802.97 in costs.

**IT IS FURTHER ORDERED** that Williams's Motion for Offset of Settlement Paid by Joint Tortfeasor (Doc. 165) is **DENIED**.

Dated the 3rd day of August, 2022.

_____
Brian Morris, Chief District Judge
United States District Court